UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| KENT DAVIS, | ) | EDCV 08-1262 SVW (SSx) |
| | ) | |
| Plaintiff, | ) | |
| | ) | FINDINGS OF FACT AND |
| v. | ) | CONCLUSIONS OF LAW |
| | ) | |
| COUNTY OF SAN BERNARDINO, SAN | ) | |
| BERNARDINO SHERIFF'S DEPARTMENT, | ) | |
| SGT. STEVE SPEAR, SHERIFF GARY | ) | |
| PENROD, in his individual | ) | |
| capacity, and DOES 2-10, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

I.    **PROCEDURAL HISTORY**

     Plaintiff has brought an action under Cal. Civ. Code § 52.1 and 42 U.S.C. § 1983 against police Sergeant Steve Spear, the County of San Bernardino, and the County of San Bernardino Sheriff's Department. Plaintiff's case is premised on two basic assertions: he was arrested without probable cause and he was subjected to excessive force during

that arrest.  Plaintiff's causes of action assert violations of the Fourth Amendment of the United States Constitution, and Art. I, § 13 of the California Constitution.  (Pl.'s Trial Brief, at 2.)  The municipal entities' liability is premised on Cal. Gov. Code § 815.2(a), which provides that government entities are vicariously liable for the acts of their employees to the extent that the employees are personally liable, and <u>Monell v. Dep't of Social Servs. of N.Y.</u>, 436 U.S. 658, 690 (1978).

In April 2009, Defendants brought a Motion for Partial Summary Judgment [docket no. 26].  Plaintiff conceded that his Fourth Amendment wrongful arrest claim was barred by <u>Atwater v. City of Lago Vista</u>, 532 U.S. 318 (2001).  The Court deferred a ruling on Defendants' arguments regarding the effect of <u>Heck v. Humphrey</u> and qualified immunity.

The Court held a bench trial on September 22, 2009.

## II.  FACTUAL FINDINGS

By way of introduction, the Court notes that, to the extent that the parties dispute the facts at issue, the court finds Mr. Davis's testimony not to be credible.  Mr. Davis's testimony is contradicted on various points by Sgt. Spear's and Mr. O'Brien's testimony.  In light of this consideration, the Court makes the following factual findings.

On October 16, 2007, Plaintiff Kent Davis was visiting his ill mother in 29 Palms, which is located near Joshua Tree, California.  At around 11:00 am, Davis went to the Joshua Tree branch of the San Bernardino Superior Court to deliver documents for his mother.  Davis was driving his mother's classic 1976 Cadillac.  Upon his arrival and

the courthouse, Davis parked the car along the curb directly in front
of the courthouse entrance.  The general parking area was some distance
away.  The area where Davis parked was clearly marked on the pavement
in a bold, yellow box, with the words "MAINTENANCE ONLY."

While at the courthouse, Davis was initially turned away by the
security guards at the entrance checkpoint because Davis was carrying a
cellular phone that included a picture-taking function.  As cameras are
not allowed in the courthouse, Davis was required to place the phone in
his car before entering the courthouse.

Defendant Sgt. Steve Spear first noticed Davis when Davis was
discussing the cellular phone with the security guards.  The encounter
between Davis and the security guards was generally amicable but Davis
was animated.  Immediately following the encounter, Sgt. Spear asked
one of the guards if Davis had a problem, and the guard replied that he
did.

Sgt. Spear approached Davis as Davis was returning his phone to
his car.  Sgt. Spear asked Davis to move his car because it was parked
in a no-parking zone.  Davis's initial response was to smirk at Sgt.
Spear, then walk around the car looking underneath it as if he had not
already noticed the no-parking label.  After Davis looked at the
"MAINTENANCE ONLY" marking on the ground, he complied with Sgt. Spear's
request.  When Davis parked the car in the general parking lot, the car
occupied four separate parking spaces.

While Davis was moving the car, Sgt. Spear noticed the car did not
have license plates on the rear of the car.  Sgt. Spear walked to where
Davis had parked and looked at the front of the car to see if there
were any front license plates.  There were none.

By the time Sgt. Spear had finished checking for the license plates, Davis had walked back toward the courthouse.  When Sgt. Spear approach, Davis said something to the effect of "I knew you were going to check my car.  Did you have to wait until I walked away before you checked my car?"

Sgt. Spear then asked Davis about his license plates.  Davis replied by noting that, lying flat along the back ledge of the car interior, there  was a Missouri dealer plate that had been loaned to his mother.  The registration tags on the plates had expired in December 2003.  Davis noted that the car had been purchased in Oklahoma.  Davis believed that these expired Missouri plates, placed on a car purchased in Oklahoma, were sufficient to permit him to drive his car in California until he obtained proper registration.  Davis noted that he was visiting his mother.

Sgt. Spear asked Davis to provide registration for the vehicle. Davis responded by referring to the Missouri dealer plate.  Sgt. Spear again asked Davis to provide registration for the vehicle.  Sgt. Spear informed Davis that Sgt. Spear would run a registration search, and if it was not properly registered Sgt. Spear would be required to tow it. Davis asked "What can I do to get you to leave the car," and Sgt. Spear answered by saying that Davis would have to produce the registration for the vehicle.

Davis then asked if he could return to the courthouse to take care of his business, and Sgt. Spear said that he could.  While Davis was in the courthouse, Sgt. Spear contacted dispatch and ran a Vehicle Identification Number search of the vehicle.  At no point did Sgt. Spear believe that the car was stolen.

While the search was pending, Davis returned and asked Sgt. Spear if Davis could speak with Sgt. Spear's watch commander. Sgt. Spear responded by pointing to his uniform patch and stating that he was the watch commander.

Davis told Sgt. Spear that Davis could provide the title for the vehicle. Sgt. Spear replied that he was interested in the registration rather than the title.

Davis then opened his cellular phone and began talking to his mother. Davis told his mother that the Cadillac would be towed unless she brought the title to the courthouse. Sgt. Spear again told Davis that he needed the registration rather than the title. Soon after, Sgt. Spear asked Davis to hang up the phone and Davis complied.

After the conversation, without being prompted, Davis told Sgt. Spear that Davis had a Missouri permit to carry a concealed weapon. Davis intended for this statement to prove to Sgt. Spear that Davis was a law-abiding citizen. Sgt. Spear asked Davis if had a weapon with him, and Davis said that he did not. Sgt. Spear believed this answer and did not fear for his safety at this point in the sequence of events.

Davis then walked toward and away from Sgt. Spear while complaining about the decision to tow the car. Without explanation, Davis then walked to the front passenger side door and reached into the car. Davis spent some time looking at and shuffling through his belongings. At this point, Sgt. Spear began to be concerned regarding his personal safety. Davis did not remove anything from the car. Sgt. Spear noted that there were no weapons in the car, then closed the car

door.  Davis then walked to the rear of the car and stood near the trunk.

Sgt. Spear asked Davis if his mother would be bringing the vehicle's registration.  Davis replied that Sgt. Spear would not do anything until Davis's mother arrived.  Sgt. Spear said that he would drop the matter if Davis provided a valid registration.  Davis again told Sgt. Spear "you will do nothing."  Sgt. Spear once again asked for registration, and Davis said "No.  You have to wait for my mother."

At this point, dispatch responded with the results of the Vehicle Identification Number search.  The search showed that the Cadillac did not appear in any system as being registered in Missouri or California.  Sgt. Spear told Davis that the car was not registered and that Sgt. Spear would tow the car.  Davis again told Sgt. Spear, "You will do nothing."

Sgt. Spear then asked Davis for the keys to the car.  Sgt. Spear believed that the keys were necessary to protect his own safety as well as the safety of his officers.  Sgt. Spear believed that Davis might use the keys to open the trunk (which had unknown contents) or to drive away in the car.  Sgt. Spear had previously experienced a situation in which, prior to conducting a tow, a driver used the keys to start the engine and drive away.  In view of this personal experience, Sgt. Spear believed that Davis might do the same if Davis retained possession of the keys.  Were Davis to drive off with the vehicle, Sgt. Spear believed the situation would have become significantly more dangerous to the public and his officers.  Sgt. Spear Sgt. Spear also believed that the keys would assist in loading the car onto the flatbed tow truck, and his request for the keys was motivated in part out of

concern for the well-being of the pristine vintage Cadillac.  Sgt. Spear also believed that the keys would assist the tow inventory.

In light of Davis's refusals, Sgt. Spear believed that Davis would not cooperate with Sgt. Spear's request for the keys.  Sgt. Spear also believed that Davis potentially would not cooperate with a request to turn around to be handcuffed.  Accordingly, Sgt. Spear performed an "immediate arrest" without any warning to Davis.  Sgt. Spear used a rear wrist lock of Davis's left arm, placed him against the side of the car, and moved Davis's right arm around his back.  Sgt. Spear then placed handcuffs on Davis.  Davis never stated that he felt any pain during this handcuffing process.[1]  There is no evidence that Sgt. Spear's handcuffing procedure violated standard practices.

Following the handcuffing, Sgt. Spear walked with Davis into the courthouse and had him sit in a chair in an office.  Sgt. Spear performed a medical screening interview, at which point Davis stated that he had had surgery on both of his shoulders and asked to have the

---

[1] On this point, the Court finds credible the testimony of Sgt. Spear and Mr. O'Brien, the hot dog vendor who witnessed these events.  The Court finds no reason to believe that Mr. O'Brien was biased in any way.  Further, the Court finds that Davis's testimony on this point was not credible.  When Davis was asked at trial about when he first complained about feeling pain, Davis initially gave a halting answer.  Davis paused and then stated that he first complained immediately as the handcuffing procedure began.

handcuffs moved to the front of his body.  Roughly 15-20 seconds later, after being assured that Davis would not cause any trouble, Sgt. Spear repositioned the handcuffs in response to Davis's request.

Davis was then held, handcuffed and under arrest for approximately one hour.  He was charged with resisting, obstructing or delaying a peace officer in performance of his lawful duties, a violation of Section 148(a)(1) of the California Penal Code.  After Davis signed a citation and promise to appear, Sgt. Spear released him.

Ultimately, the section 148(a)(1) charge was dismissed, and Plaintiff admitted to driving an unregistered vehicle under California Vehicle Code Section 4000(a)(1).

**III. UNLAWFUL ARREST**

**A.   CIVIL CODE § 52.1**

Plaintiff's first cause of action is for unlawful arrest under the Bane Act, Cal. Civ. Code § 52.1(b).[2]  Civ. Code § 52.1(b) establishes a cause of action against a person who "interferes by threats, intimidation, or coercion" with another's "exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state."  See Cal.

---

[2] Plaintiff has conceded that he may not bring 42 U.S.C. § 1983 action for wrongful arrest under the Fourth Amendment of the United States Constitution.  The Fourth Amendment permits arrests where there is probable cause to believe that any criminal offense has occurred, even if that offense is only subject to fine or citation. See Atwater v. City of Lago Vista, 532 U.S. 318 (2001).  It is undisputed that Sgt. Spear had probable cause to believe that Plaintiff had committed the offense of driving an unregistered vehicle.

Civ. Code § 52.1(a)-(b).  Public officers have no common law qualified immunity from § 52.1 liability.  Venegas v. County of Los Angeles, 153 Cal. App. 4th 1230, 1244-47 (2007).

A claim under § 52.1(b) includes three elements: (1) an actual or attempted interference with or violation of (2) a person's legal right (3) by threats, intimidation, or coercion.  See Jones v. Kmart Corp., 17 Cal. 4th 329, 334 (1998).

The Court finds that Plaintiff fails to establish that Defendants have either attempted or completed any acts that violated Plaintiff's legal rights.[3]

## B.    ELEMENTS OF UNLAWFUL ARREST

Plaintiff's cause of action for false arrest relies on the California Constitution, Art. I, § 13, which generally protects against unreasonable searches and seizures akin to the Fourth Amendment to the United States Constitution.  This question requires an examination of whether Sgt. Spear had probable cause to arrest Plaintiff.[4]

---

[3] Having determined that Plaintiff has failed to show a violation of his legal rights, the Court refrains from addressing the thorny question of whether claims for unlawful arrest and excessive force automatically satisfy § 52.1's "threats, intimidation, or coercion" requirement, or whether further proof would be required.  See generally Venegas, 32 Cal. 4th at 850-51 (Baxter, J., concurring) ("[I]t should not prove difficult to frame many, if not most, asserted violations of any state or federal statutory or constitutional right, including mere technical statutory violations, as incorporating a threatening, coercive, or intimidating verbal or written component. . . . [S]ection 52.1 will soon come to be widely viewed as a convenient civil litigation tool through which to reach a garden-variety tort defendant's deep pocket").

[4] Though public employees enjoy broad immunity for exercise of public functions, Cal. Gov. Code § 820.4 carves out a specific exception for "liability for false arrest or false imprisonment."
        Cal. Penal Code § 847 redundantly provides that
                              [footnote continued on next page]

**C.   APPLICABILITY OF HECK v. HUMPHREY**

Defendants argue that Heck v. Humphrey, 512 U.S. 477 (1994), which has been applied by the California courts in Yount v. City of Sacramento, 43 Cal. 4th 885 (2008), bars Plaintiff from challenging the validity of his arrest under Cal. Civil Code § 52.1(b).

The Court refrains from deciding the case under Heck. It is not clear that the principles of Heck even apply to claims under § 52.1. More importantly, there are unanswered questions in California law regarding the interplay between Cal. Const. Art. I, § 13 and custodial traffic arrests under Vehicle Code § 4000(a)(1), Vehicle Code § 42001.8, Penal Code § 836(a)(1), and Penal Code § 16.  Defendants' arguments call into question the validity of the custodial seizure, which is a difficult question of state constitutional law and is unnecessary for the resolution of this case.  Cf. Atwater v. City of Lago Vista, 532 U.S. 318 (2001) (deciding similar question under Federal Constitution).

**D.   VALIDITY OF CUSTODIAL ARREST**

In order to determine whether Sgt. Spear's custodial arrest of Davis was valid under the law of false arrest and the California Constitution, the Court must determine if Sgt. Spear had probable cause

---

"[t]here shall be no civil liability on the part of, and no cause of action shall arise against, any peace officer . . . acting within the scope of his or her authority, for false arrest or false imprisonment arising out of any arrest" where "[t]he arrest was lawful, or the peace officer, at the time of the arrest, had reasonable cause to believe the arrest was lawful."  This rule merely states the obverse of Gov. Code § 820.4.  If an officer makes an arrest supported by probable cause, he is immune under § 847; if an officer makes an arrest not supported by probable cause, he is subject to liability under § 820.4.

10

to believe that Davis was engaged in committing an offense under Penal Code § 148 (obstruction, resistance, or delay of a peace officer).

### 1. PROBABLE CAUSE STANDARD

"Cause to arrest exists when the facts known to the arresting officer would lead a person of ordinary care and prudence to entertain an honest and strong suspicion that the person arrested is guilty of a crime." People v. Price, 1 Cal. 4th 324, 410 (1991) (citing People v. Harris, 15 Cal. 3d 384, 389 (1975)).

Or, as summarized more thoroughly by a California court,

Probable cause exists when the facts known to the arresting officer would persuade someone of reasonable caution that the person to be arrested has committed a crime. Probable cause is a fluid concept--turning on the assessment of probabilities in particular factual contexts. It is incapable of precise definition. The substance of all the definitions of probable cause is a reasonable ground for belief of guilt, and that belief must be particularized with respect to the person to be . . . seized. Sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment. Upon proof that an arrest and confinement occurred without process and that the plaintiff was damaged, the defendant has the burden of persuasion to prove that the arrest was justified.

Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis. Probable cause is measured by an objective standard based on the information known to the arresting officer, rather than a subjective standard that would take into account the arresting officer's actual motivations or beliefs.

11

The arresting officer's actual motivations or beliefs should play

no role in the court's determination of probable cause.

Gillan v. City of San Marino, 147 Cal. App. 4th 1033, 1044-45 (2007).

Regardless of the reasons initially given for making an arrest, an

arrest is valid as long as there is probable cause to arrest for any

offense. See, e.g., People v. Superior Court (Johnson), 15 Cal. App.

3d 146; People v. Kelley, 3 Cal. App. 3d 146; People v. Walker, 273

Cal. App. 2d 720, 725.

This basic standard applies under both Federal and California

Constitutional law. See People v. Mower, 28 Cal. 4th 457, 473 (2003)

(quoting Lorenson v. Superior Court, 35 Cal. 2d 49, 56-57 (1950));

People v. Adair, 29 Cal. 4th 895, 904-05 (2003) (quoting People v.

Rhinehart, 9 Cal. 3d 139, 151 (1973)); People v. Medina, 7 Cal. 3d 30,

36-37 (1972); O'Toole v. Superior Court, 140 Cal. App. 4th 488, 511

(2006).

### 2.   PENAL CODE § 148

The crime of obstructing a police officer, Cal. Penal Code §

148(a)(1), permits fine and imprisonment of a person who "willfully

resists, delays, or obstructs" a police officer "in the discharge or

attempt to discharge any duty of his or her office or employment."

Penal Code § 148(a)(1).  "The legal elements of a violation of section

148, subdivision (a) are as follows: (1) the defendant willfully

resisted, delayed, or obstructed a peace officer, (2) when the officer

was engaged in the performance of his or her duties, and (3) the

defendant knew or reasonably should have known that the other person

was a peace officer engaged in the performance of his or her duties."

People v. Simons, 42 Cal. App. 4th 1100, 1108-09 (1996) (citations omitted).

The essence of Defendants' assertion of probable cause to arrest Plaintiff under § 148 is that Plaintiff refused to hand his keys to Defendant Spear following Defendant Spear's repeated requests for the keys while Defendant Spear was in the process of properly impounding Plaintiff's mother's Cadillac pursuant to Cal. Vehicle Code § 22651(o)(1).[5]

Defendant Spear requested the keys for these reasons: to protect Plaintiff's property (the car) during the tow; to prevent Plaintiff from driving away in the car and preventing the tow; to prevent Plaintiff from opening the trunk, which contained contents unknown to

----

[5] Vehicle Code § 22651(o)(1) provides:

"A peace officer . . . may remove a vehicle located within the territorial limits in which the officer or employee may act, under the following circumstances: . . .
(o)(1) When a vehicle is found or operated upon a highway, public land, or an offstreet parking facility under the following circumstances:
(A) With a registration expiration date in excess of six months before the date it is found or operated on the highway, public lands, or the offstreet parking facility.
(B) Displaying in, or upon, the vehicle, a registration card, identification card, temporary receipt, license plate, special plate, registration sticker, device issued pursuant to Section 4853, or permit that was not issued for that vehicle, or is not otherwise lawfully used on that vehicle under this code.
(C) Displaying in, or upon, the vehicle, an altered, forged, counterfeit, or falsified registration card, identification card, temporary receipt, license plate, special plate, registration sticker, device issued pursuant to Section 4853, or permit."

One court has stated that the purpose of § 22651 "is to allow the expeditious removal of vehicles from the streets in specified cases, with subsidiary purposes of imposing costs on the owner and retaining the vehicle as security for the costs." Spilman v. California Highway Patrol, 212 Cal. App. 3d 59, 63 (1989) (citing Stypmann v. City & Cty. of San Francisco, 557 F.2d 1338, 1343 9th Cir. 1977)).

Defendant Spear; and to assist with the inventory conducted in
connection with the impoundment.

The Court finds that Sgt. Spear had probable cause to believe that
Plaintiff "resisted, delayed, or obstructed" Sgt. Spear's exercise of
his duties as a sheriff's deputy.

In construing the meaning of these terms, "it surely cannot be
supposed that Penal Code section 148 criminalizes a person's failure to
respond with alacrity to police orders." People v. Quiroga, 16 Cal.
App. 4th 961, 966 (1993); see also People v. Wetzel, 11 Cal. 3d 104
(1974) (failure to consent to police request does not constitute
resistance, delay, or obstruction where non-consenting party retained
significant privacy interest in withholding consent); Mackinney v.
Nielsen, 69 F.3d 1002, 1005-06 (9th Cir. 1995) (act of "momentary
disobedience" by "refus[ing] to comply for only a few seconds" with
police order to stop writing on sidewalk does not constitute
resistance, delay, or obstruction).

However, while mere delay is not criminalized under § 148,
outright refusal to comply with police orders falls within the scope of
the statute if it impedes the officer in the conduct of his duties.
See Smith v. City of Hemet, 394 F.3d 689, 696-97 (9th Cir. 2005) (en
banc) (suspect's acts - - failure to take hands out of pockets, put
hands on head, leave porch, and turn around - - each constituted
violation of § 148 where they impeded ongoing investigation); In re
Muhammed C., 95 Cal. App. 4th 1325, 1330 (2002) (suspect's refusal to
move away from police car, and gesture of defiance by putting hand up
to police officers, constituted violation of § 148 because "Appellant
affirmatively responded to the police orders with defiance" and impeded

ongoing investigation); <u>People v. Allen</u>, 109 Cal. App. 3d 981, 987 n.1 (1980) (distinguishing mere "refusal to give consent" and "refus[al] to cooperate" from "actively imped[ing] an officer in the performance of his duty").

In the present case, Plaintiff repeatedly refused to give his keys to Sgt. Spear despite multiple requests from Sgt. Spear.  In light of the facts presented at trial, the Court finds that Plaintiff displayed an ongoing pattern of uncooperative behavior, and that Plaintiff's demeanor was one of outright defiance, not mere delay.  Sgt. Spear had probable cause to believe that Plaintiff's actions constituted "resist[ance], delay[], or obstruct[ion]."

In light of these factual circumstances, Sgt. Spear was acting in the scope of his duties when he asked to obtain possession of Plaintiff's carkeys.  Sheriffs are legally empowered to "preserve peace," engage in "crime prevention," <u>see</u> Cal. Gov. Code § 26600, and protect property, <u>see</u> <u>People v. Rhodes</u>, 21 Cal. App. 3d 10, 18-20 (1971) ("Both the United States Supreme Court and the California Supreme Court have upheld the lawfulness of police action taken for the protection of private property.")  Police are also authorized to impound vehicles that have violated Vehicle Code § 22651(o)(1).

Plaintiff repeatedly refused to comply with Defendant Spear's requests.  At the outset of Plaintiff's interaction with Sgt. Spear, Plaintiff displayed a clear disregard for the law.  Plaintiff parked in an area where Plaintiff was clearly not permitted to park, and when asked to move the car, Plaintiff parked his car so that it occupied four separate spaces.  Then, in Sgt. Spear's direct interactions with Plaintiff, Plaintiff repeatedly refused to cooperate.  Plaintiff

willfully failed to respond to Spear's requests for the car registration; instead, Plaintiff repeatedly and willfully ignored the fact that Sgt. Spear was asking for the registration rather than the title.  Plaintiff told Sgt. Spear how to do his job by twice telling Spear that Spear would *not do anything* until Plaintiff's mother arrived.

In addition, Plaintiff displayed impulsiveness and irrationality that suggested he might behave in unpredictable ways.  At multiple points during the encounter, Plaintiff acted in a bizarre, inexplicable manner.  For example, Davis showed his concealed weapon permit to Defendant Spear even though the subject had not been raised, and despite the fact that there was no logical reason for Davis to believe that the weapon permit was relevant to Spear's request for the car registration.  In addition, Davis rummaged through the front passenger seat without explanation, walked back and forth around the car in a sudden manner for no apparent reason, and repeatedly insisted on discussing the car's title when Spear clearly requested the registration.

Though police officers do not have blanket authorization to request carkeys from individuals, in this particular situation Sgt. Spear was justified in requesting Plaintiff's keys.  Sgt. Spear possessed an objectively reasonable belief that his possession of the carkeys would protect Plaintiff's property (the car) during the tow, and Sgt. Spear possessed a good faith desire to protect the condition of Plaintiff's vintage car.  Sgt. Spear possessed an objectively reasonable belief that Plaintiff might drive away in the car and potentially escalate the situation into a car chase, in light of

Plaintiff's bizarre and impulsive behavior as well as Sgt. Spear's previous experience with a person driving away in a car while the tow truck was en route.  In addition, Sgt. Spear possessed an objectively reasonable belief that Plaintiff might open the trunk and retrieve potentially dangerous objects, including but not limited to a gun or other weapon given that Plaintiff had already inexplicably showed Sgt. Spear a concealed weapon permit.  Finally, Sgt. Spear possessed an objectively reasonable belief that the keys would generally enable Spear to fulfill his duties by quickly and safely impounding Plaintiff's unregistered vehicle.

Each one of these considerations falls within the scope of Sgt. Spear's authorized duties, and taken together as a whole they justified Sgt. Spear actions in requesting Plaintiff's keys and arresting Plaintiff for failing to cooperate after multiple requests.  Above all, Sgt. Spear was strongly justified in believing that Sgt. Spear's possession of the keys would protect public and officer safety.  Sgt. Spear's fears were objectively reasonable in the circumstances.

Accordingly, Sgt. Spear had probable cause to arrest Plaintiff under Cal. Penal Code § 148.  Accordingly, the Court holds that Plaintiff's claim of unlawful arrest under Cal. Civ Code § 52.1 fails.[6]

---

[6] Though other states' caselaw is not binding authority regarding the meaning of Cal. Penal Code § 148, the Court notes that courts in other jurisdictions have reached similar conclusions in analogous factual circumstances.  <u>State v. Goering</u>, 392 P.2d 930, 932-33 (Kan. 1964) (affirming obstruction conviction where police officers requested truck keys from the defendant and the defendant "replied, in substance, that the officers were not getting anything and 'to heck with you guys'"; though the defendant also engaged in physical acts of resistance, the officers' initial arrest was made prior to any physical resistance, and neither the jury nor the court entertained the notion that the initial arrest was unlawful);

[footnote continued on next page]

IV.   **EXCESSIVE FORCE**

As a preliminary matter, it is important to note that Plaintiff's excessive force claim under Cal. Civ. Code § 52.1 and Cal. Const. Art. 1, § 7 is barred by Cal. Gov. Code § 821.6, which provides that "[e]xcept as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."  See also Gillan v. San Marino, 147 Cal. App. 4th 1033, 1050-51 (2007).

With respect to Plaintiff's § 1983 claim under the Fourth Amendment, Graham v. Connor, 490 U.S. 386, 397 (1989), established that police officers are permitted to use force that is "objectively reasonable" under the circumstances to effect an arrest or detention. The Court recognized that "Fourth Amendment jurisprudence has long recognized that the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion."  490 U.S. at 396.  The Ninth Circuit has laid out the factors used to determine whether the amount of force is reasonable:

> [The] relevant factors in the Fourth Amendment reasonableness
> inquiry include "[1] the severity of the crime at issue,[2]
> whether the suspect poses an immediate threat to the safety of the

---

People v. Hetzel, 531 N.E. 2d 436, 438-39 (Ill. App. 1988) (affirming obstruction conviction where the defendant refused to give house keys and car keys to police, and the defendant's refusal interfered with police officers' duties in responding to and preventing domestic violence); People v. Fidler, 280 A.D. 698 (N.Y. App. 1952) (affirming obstruction conviction against commercial truck drivers who refused to hand their keys to the state police, because the police were statutorily authorized to inspect and weigh vehicles operating on the highways).

officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." The [Supreme] Court did not, however, limit the inquiry to those factors. "Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," the reasonableness of a seizure must instead be assessed by carefully considering the objective facts and circumstances that confronted the arresting officers. In some cases, for example, the availability of alternative methods of capturing or subduing a suspect may be a factor to consider.

Smith v. City of Hemet 394 F.3d 689, 701 (9th Cir. 2005) (en banc) (citing Graham, 490 U.S. at 396; Chew v. Gates, 27 F.3d 1432, 1441 n.5 (9th Cir. 1994)).

Here, Sgt. Spear's initial decision to place handcuffs was objectively reasonable in light of the reasons identified *supra* that supported probable cause to arrest Plaintiff under Penal Code § 148. In addition, Sgt. Spear had a reasonable basis to believe that Plaintiff might have responded in an impulsive, irrational, and potentially dangerous manner had Sgt. Spear not executed the handcuffing in a swift manner. Sgt. Spear had lawful authority to perform a custodial arrest on Plaintiff, and the facts do not indicate that this custodial arrest was performed in a manner contrary to standard practices. It is clear from the testimony at trial that the handcuffing was not extraordinary in any way, but it was Plaintiff's pre-existing shoulder injuries that caused him to feel pain.

Plaintiff's principle claim is that the initial act of handcuffing caused him shoulder pain. Plaintiff asserts that he immediately

complained about the pain and told Sgt. Spear about his history of shoulder problems and shoulder surgeries. Plaintiff asserts that Sgt. Spear ignored these complaints, and as a result Plaintiff suffered unnecessary pain.

Plaintiff's excessive force claim is rejected because it is not supported by the facts presented at trial. The facts show that Plaintiff never complained about the handcuffs until he was in custody in the police conference room roughly ten minutes later. This finding is based on the Court's finding that Sgt. Spear was truthful and Plaintiff was untruthful. This finding is further confirmed by the testimony of the hot dog vendor, Mr. O'Brien.

To the extent that Plaintiff's claim arises from tight or uncomfortable placement of the handcuffs, Plaintiff presented no evidence to support this assertion. The evidence shows that the handcuffs were placed in a reasonable manner. The evidence also shows that Sgt. Spear immediately responded to Plaintiff's complaints of discomfort by repositioning the handcuffs to relieve any pain that Plaintiff might have felt in his shoulders.

Accordingly, Plaintiff's excessive force claims fail.

///

///

///

///

///

///

///

///

**V.    CONCLUSION**

    For the foregoing reasons, the Court finds Defendants are NOT LIABLE to Plaintiff.  Defendants are ORDERED to submit a Proposed Final Judgement consistent with this Order.

///

///

///

            IT IS SO ORDERED.

DATED:  November 13, 2009

                                        STEPHEN V. WILSON
                                   UNITED STATES DISTRICT JUDGE